MELINDA J. GATHERER

*vs.*

AMANDA W. WEST

Kennebec   Opinion February 9, 1928.

*In an action to recover for services performed outside of the plaintiff's own family, a refusal to instruct that the plaintiff could not recover in her own name, except by special arrangement with her husband, is not error.*

In this case the evidence was sufficient to warrant the jury's finding that the services were performed outside of the plaintiff's own family and that the defendant should have expected to pay what the services were fairly worth, but the verdict, upon the evidence, was clearly excessive.

On exception. An action of assumpsit to recover for personal services rendered by plaintiff, a married woman, to the defendant. Defendant requested an instruction that plaintiff could not recover in her own name, except by special arrangement with her husband which was refused and exception taken. A verdict for plaintiff for $1,779.10 was returned by the jury and defendant filed a general motion.

Exception overruled. Motion for new trial granted, unless plaintiff within thirty days after receipt of rescript by clerk shall file a remittitur of all over one thousand dollars.

The case fully appears in the opinion.

*Frank Plumstead and Mark J. Bartlett,* for plaintiff.

*Harvey D. Eaton,* for defendant.

SITTING: WILSON, C. J., PHILBROOK, DUNN, BARNES, BASSETT, PATTANGALL, JJ.

WILSON, C. J. An action to recover for services alleged to have been performed in caring for the defendant during a period from September 7, 1921 to November 7, 1926. In 1921, in some way it came to the knowledge of the defendant that the plaintiff and her husband were to leave the city of Bath where they had been living. Negotiations were entered into between the plaintiff's husband and the defendant, and as a result Mr. Gatherer leased the "upper tenement and its appurtenances of her dwelling house" for a term of one year at a rental of ten dollars per month, and on his part entered into a written agreement "to board" the defendant at her residence during the same period for the sum of ten dollars per month. The defendant had previously been living with another family occupying the upper tenement under some arrangements which do not appear in evidence. So far as the record discloses, it appears to have been mutually understood as a part of the arrangement that the defendant was to occupy three rooms, and the Gatherers the remainder of the upper tenement.

In 1921, Mrs. West, then Mrs. Percy, was about eighty years of age, somewhat infirm and nearly blind, but still able to move about her rooms, though with some difficulty. In May, 1922, she was married to Abner West, a man of about her age, who came to live with her, but boarded himself. Mrs. West's arrangement with the Gatherers as to board continued, and was renewed in writing in 1922 and again in 1924 and 1925.

From the time the Gatherers moved in, Mrs. Gatherer, according to the defendant's own testimony, performed more or less services in attending to Mrs. West's personal needs and the care of her rooms and also gave her such care as she required in one or more brief illnesses. In 1926, in February, Mr. West was taken ill and died in April following. Mrs. Gatherer also cared for him during his illness and supplied him with food for which she received $18.00 per week.

Following his death, Mrs. West was again taken ill, and was confined to her bed for six or seven weeks and was cared for by Mrs. Gatherer; and after that time required constant daily care and attendance. The question as to her compensation first arose in the fall of 1926, a guardian having been appointed for Mrs. West. In October, the lease of the Gatherers having terminated, they were notified to quit the premises which they did in December. Mrs.

West was removed by her guardian on November 7th and boarded elsewhere.

It was for these services in caring for Mrs. West during the entire period, upon the ground that the agreement with her husband covered only the table board of Mrs. West, that Mrs. Gatherer sought to recover in this action, and as set forth in her writ, at the rate of $10 per week from September 7, 1921 to April 25, 1926 or 240.86 weeks and $20.00 per week for the remainder of the period to November 7, 1926 or 27.74 weeks, or a total of $2,943. 81.   The jury awarded a verdict of $1779.10, evidently based on $5 per week for the 240.86 weeks and $20.00 per week for the balance of the period.

One of the first questions raised at the trial below was the right of the plaintiff to sue in her own name for these services.   Counsel for the defendant requested the following instruction: "Except by some special arrangement between the husband and wife, pay for the services such as Mrs. Gatherer claims to have rendered in this case should belong to the husband, and she could not sue and recover for the same.   You must, therefore, be satisfied that Mr. Gatherer expressly gave his claim to the pay for such services to his wife and the burden is upon her to establish the fact by clear and uncontrovertible evidence."

The Court below refused to give the instruction and left it to the jury to determine whether upon the evidence the services could be said to have been performed for her own family.

To the refusal to give the requested instruction the defendant excepted.   The exception must be overruled.   Upon the evidence in this case, it could not be said as a matter of law that the services performed by the wife were performed "for her family." *Sampson* v. *Alexander,* 66 Me., 182;   30 C. J. 826.   Having given the jury the law, as provided in Sec. 3, Chap. 66 R. S. it became a question of fact for the jury to determine upon the evidence whether the services could be said to have been performed "for her own family."   The services rendered to Mrs. West for which Mrs. Gatherer seeks to recover in this action were not ordinary household duties performed for her own family, nor even within her own household, but were in the nature of care and nursing and the care of rooms occupied by a stranger.   Such services as she performed in furnishing the board, which her husband contracted to furnish, it is admitted belonged to

her husband; but for the additional services not covered by the husband's agreement if performed under such circumstances, as would entitle her to compensation, she may recover in her own name under the statute. *Stratton* v. *Bailey*, 80 Me., 345. She further testified that it was expressly agreed between her and her husband that for such additional services she was entitled to the compensation.

The defendant also presents a motion for a new trial relying upon the ground that the damages are excessive. While admitting that Mrs. West should pay for such care and attention as she received after April 25, 1926, when she was taken ill, her counsel contends that for the period from September 7th, 1921, to April 25th, 1926, it was not the intention of the parties or the expectation of either that Mrs. Gatherer would receive any compensation for such services as she rendered in waiting on Mrs. West or in caring for her rooms.

Upon the question of liability for this period, the plaintiff testified that the defendant had told her and her husband when the arrangements were entered into that she would have a woman come in and take care of her rooms; that she reminded the defendant soon after they came, that their arrangements covered only her board and that she could not take care of her room or care for her person and wait on her; and further that defendant assured her that she should be well paid for all the work she did in addition to providing the board.

The defendant herself admitted that during this period the plaintiff waited on her, made her bed, and cleaned her rooms, and cared for her while she was ill, and that her attention was called to the fact, after her marriage in 1922, by her friends and her husband, to whom she showed her lease and agreement for board, that the agreement covered only her board and did not provide for care; yet she said nothing to the Gatherers, but renewed the agreement, at least twice, without protest so far as the evidence discloses, trusting, as she expressed it, that they would make no trouble for her.

The evidence chiefly relied on by the defense to so clearly outweigh this as to require a new trial is that the husband on his part renewed the agreements for rent and board three times without specifying that it did not cover the care of her person or room, although he well knew his wife was performing such services for which at the time of the renewal in 1925, according to her declaration, a large sum was due; and that in Mrs. West's condition she daily required personal

care and attention; and in addition, no bill was presented for these services until the plaintiff's claim amounted to nearly three thousand dollars, and a dispute having arisen they were ordered out of the tenement.

While such circumstances constitute evidence to be carefully scrutinized and weighed by the jury as bearing upon the good faith of the plaintiff and her husband and in view of the infirmities of the defendant, it is, of course, not conclusive. The jury may have found it was a reasonable explanation of her care being omitted from the first written agreement; if they believed the testimony of Mr. and Mrs. Gatherer, that Mrs. West had told them she had a woman come in and attend to her room and personal needs; and after that, as Mr. Gatherer testified, it was a matter between the defendant and his wife with which he had nothing to do.

The issue was clearly presented to the jury by the presiding Justice. The jury evidently gave more weight to the plaintiff's testimony of an express agreement to pay and to the defendant's failure on her part to have it expressly provided for in her written agreements, if such was her understanding that the arrangements included both care of her rooms and herself as well as board, and to the circumstances of the defendant's admitted infirmities and need of daily attention from which they may have found that the services rendered could not have been treated as mere gratuities, but that the defendant should have expected to pay for them.

We can not say the jury was clearly wrong in accepting the statements of the plaintiff, or in finding that under the circumstances the defendant should have expected to pay for the services rendered prior to April 25th, 1926, as well as those rendered during the remainder of the period, in view of her own admissions that she knew her written agreement covered only her board and that she merely relied on her faith that they would not present a bill for the additional care and attendance she knew she was receiving.

This Court, however, is satisfied upon a careful review of the evidence that the verdict of the jury is clearly excessive. The jury cut the compensation claimed in the writ during the period prior to her illness in April, 1926, to five dollars per week. From the evidence we think that the services rendered during a considerable portion of that period were limited largely to making her bed and some slight at-

tentions that required little time or effort on the plaintiff's part, though no doubt they increased as the defendant's infirmities grew; and inasmuch as the plaintiff fixed a value of $18.00 per week for board and care of Mr. West during his last illness, and it was testified by a physician that an "experienced" nurse in Waterville received $25.00 per week and that the care Mrs. West required during the last four months was such as any ordinary woman could give, though somewhat exacting, we think the sum of one thousand dollars is ample compensation for all the services rendered by the plaintiff during the entire period in addition to those rendered in carrying out her husband's agreement.

Unless, therefore, the plaintiff shall file a remittur of all over $1000, a new trial will be ordered.

> *Exceptions overruled.*
> *Motion for new trial granted unless plaintiff within thirty days after receipt of rescript by Clerk shall file a remittitur of all over one thousand dollars.*